## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RAMON ANTONIO RIVAS FERRERA, JOSE FREDYS SANCHEZ AMAYA, GERMAN ALFARO, and YERIS MOISES RODRIGUEZ MACHADO,** *individually and on behalf of all others similarly situated*, **Addresses filed under seal pursuant to LCvR 5.1(c)(1)** | Civil No. |
| **Plaintiffs,** | |
| v. | |
| **FOULGER-PRATT CONSTRUCTION, INC.,** **12435 Park Potomac Ave., Ste. 200** **Potomac, MD 20854** c/o Registered Agent: **Cogency Global Inc.** **1025 Connecticut Ave. NW, Ste. 712** **Washington, DC 20036** | |
| **and** | |
| **CHRISTIAN SIDING, LLC,** **310 Glenn Drive** **Sterling, VA 20164** c/o Registered Agent **Registered Agents, Inc.** **1717 N St. NW, Ste. 1** **Washington, DC 20036** | |
| **Defendants.** | |

## COLLECTIVE ACTION COMPLAINT
## FOR UNPAID WAGES

1.    Plaintiffs are construction workers who were and are building an affordable housing development known as "Paxton," located at 1603 Benning Road

NE, Washington, DC 20002 ("the Project"). The Project, which is expected to open in April 2024, is a $101 million development consisting of 148 affordable apartment units that has been touted as a solution to the area's affordable housing crisis. Ironically, the companies Plaintiffs worked for cheated them out of the wages they were due under federal and DC law, severely undermining their own financial situations at the same time they have been affordable building housing for DC residents.

2.      Defendants Christian Siding, LLC ("Christian Siding"), a Virginia-based carpentry subcontractor to general contractor Defendant Foulger-Pratt Construction, Inc. ("Foulger-Pratt"), cheated its workers by (a) misclassifying them as independent contractors when it hired them and treating them as independent contractors until it learned in December 2023 that workers were interested in forming a union, (b) failing to pay overtime, (c) failing to pay the prevailing wage, and (d) failing to pay the DC minimum wage. Under DC law, Defendant Foulger-Pratt is liable for the wage theft of its subcontractor.

3.      During the time it treated Plaintiffs as independent contractors, Christian Siding paid them a purported "daily" rate for 8- and 9-hour shifts, up to six shifts a week. Instead of paying a true daily rate, as is sometimes authorized by Federal or DC wage and hour law, Christian Siding improperly paid less than the daily rate whenever Plaintiffs worked less than the full scheduled shift, including when Defendant Christian Siding cut the shift short.

4.      Once Christian Siding began paying Plaintiffs as employees, it still did not pay them all wages due because it did not pay them at all for hours worked over 40 in a workweek.

5.      DC law requires contractors and subcontractors to public works contracts to pay at least the "prevailing wage rate" to their employees working on the public works project, and to pay one and-one-half times that rate for hours worked over 40 in a workweek. Federal law requires employers to pay employees one and-one-half the applicable legal wage rate for all hours worked over 40 in a workweek. Plaintiffs allege that the prevailing wage for the Project rate (and thus the applicable legal wage rate for federal law purposes) was $44.14 per hour. Defendant Christian Siding paid Plaintiffs and similarly-situated employees a wage rate of $13.58 and $18.11 per hour—far below the applicable prevailing wage rate—for all the time they worked on the Project, including for hours over 40 in a workweek.

6.      Defendant Christian Siding sought to maximize its profits through a massive wage theft scheme, as detailed in this Complaint. Plaintiffs were cheated out of approximately $30.00/hour for straight-time hours and more than $50.00/hour for overtime hours for work on the Project.

7.      Plaintiffs seek to recover, for themselves and other similarly-situated employees that they seek to represent, unpaid wages and overtime compensation, damages, declaratory and injunctive relief, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and the DC Minimum Wage Revision Act, DC Code § 32-1001 *et seq*.

("DCMWA"), the DC Wage Payment and Collection Law, DC Code § 32-1301 *et seq.* ("DCWPCL"), and the DC Workplace Fraud Act, DC Code §§ 32-1331.01–15 ("DCWFA") (collectively, the "DC Wage Laws").

8.    Plaintiffs bring this action on behalf of themselves and all other similarly-situated current and former non-exempt employees of Defendant Christian Siding who performed carpentry work on the Project and who elect to join this action pursuant to the collective-action provisions of the FLSA, 29 U.S.C. § 216(b), and DC Code § 32-1308(a)(1)(C)(III).

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this is a civil action arising under the FLSA, 29 U.S.C. § 201 *et seq.* This Court has supplemental jurisdiction over Plaintiffs' claims arising under DC law pursuant to 28 U.S.C § 1367(a) and Article III, Section 2 of the United States Constitution. Plaintiffs' DC law claims are so closely related to their claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants' wage theft occurred in this District, such that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

11.     Plaintiff Ramon Antonio Rivas Ferrera is an employee of Defendant Christian Siding who was hired on or about August 24, 2023 to perform carpentry work on the Project.

12.     Plaintiff Jose Fredys Sanchez Amaya is an employee of Defendant Christian Siding who was hired on or about February 8, 2023 and performed carpentry work on the Project.

13.     Plaintiff German Alfaro is an employee of Defendant Christian Siding who was hired on or about August 28, 2023 to perform carpentry work on the Project.

14.     Plaintiff Yeris Moises Rodriguez Machado is an employee of Defendant Christian Siding who was hired on or about September 3, 2022 to perform carpentry work on the Project.

15.     As required by the FLSA, 29 U.S.C. § 216(b), each Plaintiff has given his written consent to become a party to this action. True and correct copies of Plaintiffs' FLSA consent forms are filed contemporaneously with this Complaint.

16.     Plaintiffs and putative plaintiffs are all former or current non-exempt employees of Defendants who performed carpentry work on the Project during the period of three (3) years before the filing of this Complaint.

17.     Defendant Foulger-Pratt is a DC corporation that operates as a general contractor and construction manager on public and private projects nationwide. Its principal place of business is located at 12435 Park Potomac Avenue, Suite 200, Potomac, MD 20854, and its registered agent in the District of Columbia is Cogency

Global Inc., 1025 Connecticut Avenue NW, Suite 712, Washington, DC 20036. At all times relevant to this action, Defendant Foulger-Pratt has been Plaintiffs' employer within the meaning of the DC Wage Laws. Upon information and belief, Foulger-Pratt was signatory to contracts worth more than $500,000 with the DC Department of Housing and Community Development ("DHCD").

18.    Defendant Christian Siding is a Virginia limited liability company doing business in the District of Columbia. Its principal place of business is located at 310 Glenn Drive, Sterling, VA 20164, and its registered agent in the District of Columbia is Registered Agents, Inc. located at 1717 N Street NW, Suite 1, Washington, DC 20036. At all times relevant to this action, Defendant Christian Siding (a) has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA; and (b) has been Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), and the DC Wage Laws. Upon information and belief, Christian Siding was signatory to contracts with Foulger-Pratt worth more than $250,000 to perform work on the Project.

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

19.    On information and belief, Plaintiffs allege that the Project is a $101 million public works project to build a multi-family affordable housing development that is funded in part by the DC Housing Finance Agency through $46.9 million in tax exempt bonds and $42 million in tax credits, as well as through a subsidized $29 million loan from DHCD's Housing Production Trust Fund, and that the contracts made for construction of the Project are public works contracts.

20.    Defendant Foulger-Pratt is the Project's developer and general contractor.

21.    Defendant Christian Siding is a subcontractor to Foulger-Pratt on the Project, providing carpentry work on the Project.

22.    Defendant Christian Siding employed Plaintiffs and other similarly-situated employees to perform carpentry work on the Project.

23.    Each of the Defendants was and continues to be the employer of each Plaintiff and similarly-situated person. The employer-employee relationship existed because each Defendant either directly controlled the work of each Plaintiff, including by assigning work tasks to each Plaintiff and by setting each Plaintiff's hours and wage rates or, alternatively, each Plaintiff's work was controlled by a subcontractor of each Defendant, including by assigning work tasks to each Plaintiff and by setting each Plaintiff's hours and wage rates.

24.    To the extent that any Defendant is not liable as a direct and conventional common law employer of any Plaintiff, such Defendant is liable because a subcontractor of such Defendant was an employer of such Plaintiff.

25.    As an employer of Plaintiffs and/or as the general contractor of the subcontractor that employed Plaintiffs, Defendants are jointly and severally liable for the Plaintiffs' unpaid wages.

26.    At all relevant times, Defendant Christian Siding had and continues to have the power to hire and fire Plaintiffs.

27.     At all relevant times, Defendant Christian Siding set Plaintiffs' schedules, assigned Plaintiffs' tasks, and supervised Plaintiffs' work. More specifically, its Field Manager Jesus Mejila and foreman/supervisor known as Bladimir worked onsite and supervised Plaintiffs' work, set their schedules, assigned their tasks, and informed them of Christian Siding policies that Plaintiffs were and are required to abide by.

28.     Plaintiffs were not engaged in independent business at any time relevant to this Complaint.

29.     At all relevant times, Plaintiffs performed work activities that were within Defendants' usual course of business and integral to Defendants' usual course of business of providing construction services.

30.     Despite these facts, when it hired Plaintiffs and similarly-situated employees to perform carpentry work on the Project, Defendant Christian Siding incorrectly characterized them as independent contractors.

31.     At all times relevant to this action, the usual workweek for Plaintiffs and similarly-situated employees perform carpentry work on the Project was 7:00 am to 5:00 pm Monday through Friday with a one-hour unpaid meal break, and 7:00 am to 3:00 pm on Saturday with a 15-minute paid break. Plaintiffs and similarly-situated employees regularly performed carpentry work on the Project well more than 40 hours per workweek.

32.    While it treated Plaintiffs as independent contractors, Defendant Christian Siding paid Plaintiffs a purported daily rate ranging from $130 to $180 per shift.

33.    However, at all times relevant to this action, Defendant Christian Siding paid less than the daily rate for work on the Project if the shift was cut short. For example, when shifts were cut short due to lack of power at the job site or extremely cold weather, Christian Siding paid less than the daily rate, sometimes as little as 1/4 of the daily rate. Similarly, if an employee had to leave the shift early, or took a break on a Saturday shift longer than the 15-minute paid break, Christian Siding reduced the daily rate for that shift by 1/4, paying only 3/4 of the daily rate for the shifts.

34.    At all times relevant to this action, Defendant Christian Siding did not provide Plaintiffs and similarly-situated employees performing carpentry work on the Project with any fringe benefits (such as health and welfare or retirement benefits), only paying wages for the work they performed on the Project.

35.    When Defendant Christian Siding was treating Plaintiffs as independent contractors and paying them a daily rate, it failed to deduct income taxes, Social Security, Medicare, and other payroll taxes from their paychecks.

36.    In mid-December 2023, Defendant Christian Siding changed its payroll practices, and began paying Plaintiffs a purported hourly rate via payroll checks that made deductions for taxes. On information and belief, Plaintiffs allege that Defendant Christian Siding changed its practices when it learned that its employees were

interested in forming a union. Plaintiffs' duties and Defendant Christian Siding's control over their carpentry employees' work on the Project were the same after Christian Siding changed its payroll practices as they were when Christian Siding was treating the workers as independent contractors and paying them daily rates.

37.    After Christian Siding changed its payroll practices, its violations of applicable wage and hour law continued. The purported hourly wage rates it paid to Plaintiffs and similarly-situated employees performing carpentry work on the Project were well below the applicable prevailing wage rate, and Christian Siding did not pay the workers at all for hours they worked over 40 in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

38.    Plaintiffs bring the claims asserted herein on behalf of themselves and all similarly-situated persons who work or have worked for Defendant Christian Siding on the Project during the period of three (3) years before the filing of this Complaint and the date of final judgment, who were subject to Defendant Christian Siding's unlawful common policies of (a) misclassifying them as independent contractors; (b) failing to pay the applicable prevailing wage rates for work performed on the Project and/or failing to pay the applicable minimum wage rate under DC law; and (c) failing to pay overtime under federal and DC laws for hours worked over 40 in a workweek, and who elect to join this action pursuant to the FLSA, 29 U.S.C. § 216(b), and the DC Wage Laws (the "Collective").

39.    This action is maintainable as an "opt-in" collective action as to claims for unpaid wages and overtime compensation, damages, declaratory and injunctive relief, and attorneys' fees and costs pursuant to the FLSA and the DC Wage Laws.

40.    DC Code § 32-1308(a)(1)(C)(III) permits collective actions for violations of the DC Wage Laws, to be brought consistent with collective-action procedures of the FLSA, 29 U.S.C. § 216(b).

41.    There are numerous current and former non-exempt employees of Defendants who are similarly situated to Plaintiffs. The precise number of similarly-situated employees is known only to Defendants.

42.    Because these similarly-situated employees are readily identifiable to Defendants and should be located through their records, they should be readily notified of this action and allowed to join it for the purpose of collectively adjudicating their claims for unpaid wages, damages, declaratory and injunctive relief, and attorneys' fees and costs under the FLSA and the DC Wage Laws.

43.    A collective action is appropriate because Plaintiffs and the Collective (a) are or were employees of Defendant Christian Siding during the statutory period; (b) are or were employed in the District of Columbia because they all regularly spent more than 50% of their working time in the District of Columbia while performing carpentry services on the Project; (c) have or had similar duties and performed similar tasks in the Project; (d) allege similar violations of the FLSA and DC Wage Laws in the form of unlawful compensation policies; and (e) seek the same remedies.

44.    Plaintiffs are adequate representatives of the Collective because they are non-exempt employees who performed construction work for Defendant Christian Siding on the Project and are subject to the same unlawful common policies by Defendant Christian Siding that deprived them of duly earned wages.

### COUNT I—VIOLATION OF FLSA OVERTIME PROVISIONS
### (29 U.S.C. § 201 *et. seq.*)
### [Against Defendant Christian Siding]

45.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

46.    Section 7(a) of the FLSA, 29 U.S.C. § 207(a), requires Defendant Christian Siding to pay the named Plaintiffs and the Collective time-and-one-half overtime compensation for their hours worked on the Project in excess of 40 per workweek.

47.    Defendant Christian Siding had and continues to have a policy against paying overtime wages to employees who perform carpentry work on the Project in excess of 40 per workweek.

48.    Defendant Christian Siding violated, and continues to violate, the requirements of the FLSA by failing to pay its employees at the rate of time and one-half for all hours worked on the Project in excess of 40 in a workweek.

49.    Plaintiffs and the Collective are entitled to be paid at one and one-half their regular rate of pay that lawfully applies for those hours worked on the Project in excess of 40 hours in a workweek.

50.    Defendant Christian Siding's actions were willful as evidenced by its intentional misclassification of carpentry employees on the Project as independent

contractors for months despite controlling all aspects of their work, and by its failure to pay Plaintiffs and the Collective all wages due, including for any hours worked in excess of 40 in a workweek at overtime rates, when Defendant Christian Siding knew, or should have known, that they were entitled to such wages.

51.     At all times relevant to this action, Defendant Christian Siding failed to maintain proper time and payroll records as required by Section 211(c) of the FLSA, prepared false paychecks, W-2 and 1099 forms, and failed to make legally-required payments for Social Security and Medicare on behalf of Plaintiffs and the Collective as mandated by the FLSA.

52.     Defendant Christian Siding failed to properly disclose or apprise Plaintiffs and the Collective of their rights under the FLSA.

53.     Due to the intentional, willful, and unlawful acts of Defendant, Plaintiffs and the Collective are entitled to an additional equal amount as liquidated damages pursuant to Section 216(b) of the FMLA, 29 U.S.C. § 216(b).

54.     Plaintiffs and the Collective are entitled to an award of their reasonable attorneys' fees and costs under Section 216(b) of the FLSA, 29 U.S.C. § 216(b).

55.     Plaintiffs and the Collective are entitled to injunctive relief ordering Defendant to cease its practice of falsifying payroll records and to keep accurate records of employees' working time under Section 211(c) of the FLSA, 29 U.S.C. § 211(c).

### COUNT II—VIOLATION OF DC PREVAILING WAGEPAYMENTLAWS
**(DC Code § 32-1301 *et seq*.)**
**[Brought Against All Defendants]**

56.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

13

57.     Defendant Foulger-Pratt is and was the general contractor on the Project, a DC Public Works Project, and is therefore jointly and severally liable to Plaintiffs for Defendant Christian Siding's violations of the DCWPCL, pursuant to DC Code § 32-1303(5).

58.     The Project was and is subject to laws and regulations mandating the payment of prevailing wages and benefits to laborers working on public works. For projects funded in whole or in part by the District of Columbia under DC Code § 32-1301(3)(E)(ii) & (iii), the prevailing wage laws require that contractors and subcontractors pay workers no less than the prevailing wage. Local prevailing wages can be determined by job classification and consist of a basic hourly rate of pay plus another amount for required fringe benefits.

59.     Section 32-1305(b) of the DCWPCL instructs that "[i]n enforcing the provisions of this chapter, the remuneration promised by an employer to an employee shall be presumed to be at least the amount required by federal law, including federal law requiring the payment of prevailing wages, or by District law."

60.     Upon information and belief, the contracts between Defendant Foulger-Pratt and DHCD incorporated the prevailing wage rate requirements applicable to construction workers on the Project.

61.     Upon information and belief, Defendant Foulger-Pratt awarded Defendant Christian Siding subcontracts for construction services on the Project.

62.    Upon information and belief, the contracts for the Project between Defendants Foulger-Pratt and Christian Siding incorporated the prevailing wage rate requirements for construction workers on the Project.

63.    Plaintiffs are intended third-party beneficiaries of the contracts between DHCD and Defendant Foulger-Pratt as well as the subcontract between Defendants Foulger-Pratt and Christian Siding.

64.    Defendant Christian Siding hired Plaintiffs and the Collective to perform carpentry work on the Project.

65.    At all times relevant to this action, the prevailing wage rate for carpentry work on building construction projects has been $30.34 per hour and the fringe benefits rate has been $13.80 per hour, totaling $44.14 per hour.

66.    Plaintiffs and the Collective worked for Defendant Christian Siding on the Project and were paid substantially less than the applicable prevailing wages and fringe benefits for their straight-time and overtime work.

67.    Defendants had an obligation to pay Plaintiffs and the Collective the proper prevailing wage rates pursuant to DC Code § 32-1301(3)(E)(ii) & (iii).

68.    Defendants violated the DCWPCL by failing to timely pay Plaintiffs and the Collective all wages due, including prevailing wages and fringe benefits, for the carpentry work performed on the Project during the period of three (3) years before the filing of the Complaint through the date of final judgment.

69.    Defendants' actions were willful and not in good faith.

70.     Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs and the Collective under this Count for all unpaid wages in such an amount to be proven at trial, plus statutorily available damages equal to three (3) times the amount of unpaid wages, interest (both pre- and post-judgment), attorneys' fees, costs, and any further relief this Court deems appropriate.

### COUNT III—VIOLATION OF DC MINIMUM WAGE LAW
**(DCMWA, DC Code § 32-1003(a))**
**[Brought Against All Defendants]**

71.     Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

72.     Defendants had and continue to have an obligation to pay DC's minimum wage rate to Plaintiffs and the Collective for work performed on the Project.

73.     At all times relevant to this action, the DC minimum wage rate has been $17.00 per hour.

74.     Defendants failed to pay DC's minimum wage rate to Plaintiffs and the Collective for work performed on the Project, instead paying them a purported daily rate that amounted to less than DC's minimum wage rate.

75.     Defendants' violations of the DCMWA were willful in that Defendants knew or should have known that the purported daily rate paid to Plaintiffs and the Collective was insufficient to compensate them at the DC minimum wage rate for all hours worked.

76.     Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs under this Count for unpaid minimum wages in such an amount to be proven at trial, plus statutorily available damages equal to three (3)

times the amount of unpaid minimum wages, interest (both pre- and post-judgment), attorneys' fees, costs, and any further relief this Court deems appropriate.

## COUNT IV—VIOLATION OF DC OVERTIME LAWS
### (DCMWA, DC Code, § 32-1003(c))
### [Brought Against All Defendants]

77.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

78.    Defendants had an obligation to provide overtime pay to Plaintiffs and the Collective for hours worked over 40 in a workweek based on the applicable prevailing wage rate and/or DC minimum wage rate.

79.    Plaintiffs and the Collective regularly worked in excess of 40 hours per week on the Project.

80.    Defendants failed to pay Plaintiffs and the Collective at overtime rates for hours worked over 40 in a workweek.

81.    Defendants' violations of the DCMWA were willful in that they knew or should have known that the purported daily rate was insufficient to provide Plaintiffs with overtime pay for hours worked over 40 in a workweek at either the applicable prevailing wage rate or the DC minimum wage rate.

82.    Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs and the Collective under this Count for unpaid overtime wages in such an amount to be proven at trial, plus statutorily available damages equal to three (3) times the amount of unpaid overtime wages, interest (both pre- and post-judgment), attorneys' fees, costs, and any other and further relief this Court deems appropriate.

## COUNT V—VIOLATION OF DC PAYCHECK LAWS
### (DCMWA, DC Code § 32-1008(b)-(c))
### [Against All Defendants]

83.    Plaintiffs repeat and reallege the foregoing paragraphs of this Complaint as fully set forth herein.

84.    The Wage Theft Prevention Amendment Act of 2014 (the "Act") requires employers to "furnish to each employee at the time of hiring . . . a written notice" containing "(1) the name of the employer . . . ; (2) the physical address of the employer's main office . . . ; (3) the telephone number of the employer; (4) the employee's rate of pay and the basis of that rate, including . . . the applicable prevailing wages; (5) the employee's regular payday . . . ; and (6) any such other information as the Mayor considers material and necessary."

85.    The Act further requires that employers include specific information on paystubs issued to employees, including the number of hours that each employee worked in a pay period.

86.    Defendants did not provide Plaintiffs and the Collective any notice disclosing the statutorily required information.

87.    Defendants did not provide Plaintiffs and the Collective with paystubs that accurately reflected the hours worked.

88.    Defendants' actions were willful in failing to disclose the statutorily required information.

89.    Defendants are liable, individually and collectively, jointly and severally, to Plaintiffs for statutory penalties for each failure to provide the written

notice required by the Act for, attorneys' fees, costs, and other legal or equitable relief as may be appropriate.

### COUNT VI—VIOLATION OF DC MISCLASSIFICATION LAWS
**(DCWFA, DC Code § 32-1331.04)**
**[Against All Defendants]**

90.    Plaintiffs repeats and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

91.    Section 32-1331.04 of the DCWFA prohibits employers in the construction industry from improperly classifying employees as independent contractors.

92.    From the date of hiring the workers and until it changed its payroll practices in mid-December 2023, Defendant Christian Siding misclassified Plaintiffs and similarly-situated employees as independent contractors, when they were in fact employees.

93.    Defendants violated the DCWFA by improperly classifying Plaintiffs and all similarly-situated individuals as independent contractors, rather than as employees.

94.    Each time Defendants paid Plaintiffs and all similarly-situated individuals performing carpentry work on the Project as independent contractors rather than employees constitutes a separate violation of the DCWFA.

95.    Defendants are liable to Plaintiffs and all similarly-situated employees for the wages, salary, employment benefits, and other compensation denied or lost to them by reason of the violations; compensatory damages; treble damages for lost

wages or benefits; an additional $500 for each violation; reasonable attorneys' fees and litigation costs; and any other relief this Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

1.    Certify this matter as a collective action pursuant to 29 U.S.C. § 216(b) and DC Code § 32-1308(a)(1)(C)(III);

2.    Grant judgment against Defendants, jointly and severally, and in favor of Plaintiffs and the Collective in the amount of each Plaintiff's and member of the Collective's respective unpaid overtime wages plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

3.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff's and member of the Collective's respective unpaid wages and benefits, three times unpaid wages and benefits in liquidated damages, $500 for each violation of the DCWFA, and reasonable attorneys' fees and costs, all pursuant to the DC Wage Laws;

4.    Award Plaintiffs prejudgment interest at the legal rate from the date of violations until judgment, and post-judgment interest at the legal rate thereafter; and

5.    Award such other relief as this Court deems just and proper.

Dated:  January 29, 2024        Respectfully submitted,

<u>/s/ Mark Hanna</u>
Mark Hanna (DC Bar No. 471960)
Arlus Stephens (DC Bar No. 478938)
Nicole Rubin (DC Bar No. 90015654)
Murphy Anderson PLLC
1401 K St. NW, Suite 300
Washington, DC 20005
Phone: (202) 223-2620
mhanna@murphypllc.com
astephens@murphypllc.com
nrubin@murphypllc.com

*Counsel for Plaintiffs*